IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VINCENT CULLIVER,

    Plaintiff,

v.

CENTER FOR TOXICOLOGY &
ENVIRONMENTAL HEALTH LLC,

    Petitioner,

v.

BP EXPLORATION & PRODUCTION, INC.
& BP AMERICAN PRODUCTION CO.,

    Defendants.

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

Case No. 3:22-mc-00006

This Document Relates to:
*Culliver v. BP,* Case No. 3:21-cv-4942-MCR-GRJ
_____/

## ORDER

Pending before the Court is the Non-Party Center for Toxicology & Environmental Health, LLC's Motion to Quash and for Protective Order. ECF No. 1. In its motion, the Center for Toxicology & Environmental Health, LLC ("CTEH") challenges thirty-nine (39) areas of inquiry set forth in Plaintiff's Rule 30(b)(6) notice of deposition, ECF No. 1-1 at 9-12, as well as thirty-two (32) categories of documents subpoenaed by Plaintiff

pursuant to Rule 45, *id*. at 13-16. Defendants BP Exploration & Production, Inc. and BP American Production Co. (collectively, "BP") support CTEH's petition, ECF No. 11, and Plaintiff opposes it, ECF No. 7. The motion is now ripe and has been referred to the undersigned for resolution. For the reasons explained below CTEH's motion to quash and for protective order, ECF No. 1, is due to be denied.

## I. BACKGROUND[1]

This discovery dispute relates to Plaintiff's Back-End Litigation Option ("BELO") lawsuit pending before this Court— *Culliver v. BP,* Case No. 3:21-cv-4942-MCR-GRJ.[2] The process for bringing a BELO lawsuit is outlined in the court-approved Medical Benefits Class Action Settlement ("MSA").[3]

---

[1] For context, this BELO lawsuit arises out of the blowout, explosions, fires, and subsequent oil spill that occurred at the Deepwater Horizon mobile offshore drilling unit in the Gulf of Mexico on April 20, 2010. Plaintiff was an oil spill clean-up worker who allegedly suffered injuries caused by her exposure to toxins during the clean-up. Victims of the oil spill filed hundreds of cases. In August 2010, the cases were consolidated in the Eastern District of Louisiana as part of the Deepwater Horizon multidistrict litigation (MDL No. 2179). *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179-CJB-JCW (E.D. La).

[2] CTEH's motion to quash was originally filed in the Eastern District of Arkansas. The Eastern District of Arkansas transferred the motion to this Court on December 30, 2021. Case No. 3:21-mc-68, ECF No. 21. At the time of the transfer, the motion related to another BELO case, *Tillery-Perdue v. BP*, Case No. 5:21-cv-52-MCR-GRJ (N.D. Fla.). CTEH's motion became moot in *Tillery-Perdue* after Plaintiff's counsel withdrew from the representation. *See* ECF No. 31.

[3] *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179-CJB-JCW (E.D. La), Deepwater Horizon Medical Benefits Class Action Settlement Agreement, ECF No. 6427-1.

Under the MSA, the BELO process is the exclusive means by which a plaintiff may seek compensation from BP for oil spill related injuries sustained as a result of his or her oil spill clean-up work.[4]

The MSA sets forth very limited issues that may be litigated at trial. Pertinent to this dispute, the MSA expressly requires proof of the amount and location of the toxic substances a plaintiff claims caused him or her harm, as well as the level of exposure and legal causation.[5]

---

[4] The BELO process is set forth in the MSA § VIII.

[5] The issues to be litigated at trial as prescribed by the MSA are as follows:

> (i) The fact of diagnosis (*i.e.,* whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was correctly diagnosed with the alleged LATER-MANIFESTED PHYSICAL CONDITION);
> (ii) The amount and location of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;
> (iii) The level and duration of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;
> (iv) Whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION was legally caused by his or her exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES;
> (v) Whether there exist any alternative causes for the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER MANIFESTED PHYSICAL CONDITION, including, but not limited to,

CTEH's role in the BELO lawsuits is as an Industrial Hygiene contractor.  During the post oil-spill response, CTEH worked on behalf of BP to collect and analyze industrial hygiene data and reports of work-related illness and injuries.  Plaintiff argues that she cannot meet her burden of proving the harmful measure of exposure and legal causation required by the MSA without presenting numerous experts to rebut BP's counter-expert opinions which rely on a large quantity of occupational monitoring datasets generated by CTEH.  ECF No. 7-1 at 3, 26.

Citing Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure, CTEH asks the Court to quash Plaintiff's subpoena and deposition notice because compliance with these requests would cause CTEH undue burden and expense.  ECF No. 2 at 2.  Additionally, CTEH contends that many of the documents subject to Plaintiff's subpoena are nine (9) to eleven (11) years old and are, therefore, difficult to retrieve.  ECF No. 2 at 2.  To locate these documents, CTEH says it would be forced to search its warehouse and expend "innumerable man-hours and expense."  ECF No. 2 at 2. Moreover, without the requested documents on hand, CTEH says that it will

---

        exposure to other substances or sources of contaminants and/or toxins; and
        (vi) The amount, if any, of compensatory damages to which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is entitled.

MSA § VII.3. Issues to be Litigated.

not be able to produce a Rule 30(b)(6) witness or witnesses who can adequately address the areas of inquiry in Plaintiff's deposition notice. *Id*. at 3.

CTEH further argues that Plaintiff's discovery requests are overly broad, because "many of the areas of inquiry and document requests are not limited to a particular relevant time period or geographic location and are not limited to any particular exposure alleged by the plaintiff in this case." *Id*. Finally, CTEH asks the Court to enter a protective order pursuant to Federal Rule of Civil Procedure 26, suggesting that many of the documents requested "may include proprietary information and/or information that is protected by the attorney-client privilege, work product doctrine, or contain confidential business information belonging to the Defendants in this case." *Id*. And, to the extent discovery is allowed, CTEH requests that costs and expense associated with compliance be shifted to Plaintiff. *Id*. at 8.

In response, Plaintiff lodges four main counter arguments. First, Plaintiff argues that CTEH is not a disinterested nonparty. Rather, CTEH is "an interested nonparty, a fact witness, and lead Industrial Hygienist contractor for the Defendants." ECF No. 7-1 at 8. CTEH was also BP's corporate deponent in the area of industrial hygiene. ECF No. 7-1 at 16.

5

As such, Plaintiff says that CTEH should not be allowed to hide behind blanket general objections "to resist relevant inquiries related to data bias and the available exposure data collected by BP through its contractors and employees." *Id*. at 8.

In the present case Plaintiffs seek "information regarding the amount of chemicals of concern released from the Deepwater Horizon, the location and timing of the release and amounts of chemicals of concern all BELO plaintiffs were exposed to, as well as the 'level and duration' of exposure." *Id*. at 11. Plaintiff says this information is "highly relevant" to her lawsuit and that CTEH has failed to meet its burden of establishing that compliance with Plaintiff's discovery requests would cause it undue burden or expense. *Id*. at 11, 14.

Second, with respect to CTEH's argument that Plaintiff's requests are not narrowly tailored, Plaintiff says that her requests are "specific and limited to the relevant time period" and because CTEH collected data "over a wide geographic area… personal monitoring [data] does not exist for Plaintiff, nor for most clean-up workers." *Id*. at 15, 19. As a result, Plaintiff can only seek what CTEH has, which is data that exceeds "Plaintiff's personal breathing zone." *Id*. at 20. Plaintiff also says that her request for communications between CTEH and BP and/or governmental agencies

6

and officials can be limited by a "search for electronic communications" sent to or received by "CTEH employees with managerial or oversight responsibilities." ECF No. 7-1 at 31.  Moreover, any privileged communications within these categories of documents can be redacted if withheld. *Id*. at 30.[6]

Third, Plaintiff argues that she should be allowed to test the completeness of BP's production of CTEH materials requested in discovery, and that she should be permitted to assess whether CTEH's industrial hygiene data collected (or its conclusions) were improperly influenced by BP.  *Id*. at 27.  Despite CTEH's and BP's assertions that all the information Plaintiff seeks has either been produced or is publicly available, Plaintiff argues that this particular type of information has not been disclosed by BP and would not have found its way into the public arena.  *Id*. at 26.

---

[6] Plaintiff seeks "[a]ll Documents, voicemails and recordings related to any Person, including state, federal, local governmental agencies and/or officials, that relate in any way to the data CTEH collected… during the relevant times from April 20, 2010 to April 20, 2012 for the Deepwater Horizon Oil Spill Clean-up Efforts, and/or the results of any testing of such data.  Plaintiff's Document Request No. 11.  ECF No. 10-1 at 12.  Specifically, Plaintiff's request for communications includes those related to "data qualifiers and data qualifier codes used by CTEH."  Plaintiff's Document Request No. 12. *Id*.

Finally, Plaintiff says that CTEH failed to meet its burden by way of an affidavit that establishes either (1) CTEH's compliance with her discovery requests would result in undue burden or expense, or (2) that good cause exists to warrant a protective order.  ECF No. 7-1 at 14, 17-18.  Accordingly, Plaintiff asks the Court to deny CTEH's Petition and overrule CTEH's objections.

## II.  LEGAL STANDARDS

Rule 26 governs the scope of discovery in a civil action:

> A party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense outweighs its likely benefit.

Fed. R. Civ. P. 26(b). The term "relevant" in this definition is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (*citing Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). The scope of discovery, though, is not without limits. *See Oppenheimer,* 437 U.S. at 351-52, 98 S.Ct. at 2389-90. "Discovery of matter 'not reasonably

calculated to lead to discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Id.* at 351-52, 98 S.Ct. at 2390. [7]

"The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden [or] expense ... bears the burden of proving the discovery is in fact privileged or ... unduly burdensome and/or expensive." *Citizens Union of New York v. Attorney General of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citations omitted).

## A.     Rule 45 Motion to Quash Subpoena.

Federal Rule of Civil Procedure 45 provides the framework for requiring nonparties to "attend and testify; [and] produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii).

---

[7] Discovery requests that are otherwise reasonable may also be limited for the following reasons:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, and the importance of the proposed discovery in resolving issues.

Fed. R. Civ. P. 26(b)(2).

When discovery is requested from a nonparty, "[a] party or attorney must take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena… [and] the court… must enforce this duty." Fed. R. Civ. 45(d)(1).  "[F]ederal courts are particularly mindful of Rule 45's undue burden and expense limitations." *Progressive Cas. Ins. Co. v. F.D.I.C.*, 302 F.R.D. 497, 504-05 (N.D. Iowa 2014) (citations omitted).

1. *Interested Non-Party*.

The courts view Rule 45's prohibition against unduly burdening a non-party through a different lens when the non-party is not truly disinterested.  "An interested non-party is an entity that does not have an actionable right at issue in the litigation, but has a significant, underlying connection to the case and, typically, some sort of financial or reputational stake in the litigation's outcome." *Ala. Aircraft Ind., Inc. v. Boeing Co.*, Case No. 2:11-cv-03577-RDP, 2016 WL 9781825, *5 (N.D. Ala. Feb. 25, 2016) (examining cost-shifting factors set forth in *In re Exxon Valdez*, 142 F.R.D. 380, 383-84 (D.D.C. 1992) (non-party trade association was found to have an "actual interest in the outcome of [the] litigation" where twenty-nine percent (29%) of its income was derived from dues paid by the defendants), which factors were also applied in *In re Honeywell Intern., Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (non-party accounting firm

10

was "not a classic disinterested non-party," because it served as the defendant's primary financial auditor during the period relevant to the litigation) and *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009) (non-party's sharing of corporate officers with the defendants, as well as its financial stake in an underlying transaction, rendered it interested)).

    Rule 45 "is aimed at protecting persons who are disinterested and thus have little to gain from their outlays in compliance cost…." *Cornell v. Columbus McKinnon Corp.*, Case No. 13-cv-2188-SI, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015) (*citing* Fed. R. Civ. P. 45, Advisory Committee Notes). "The Rule was meant to protect those who are powerless to control the scope of litigation and discovery and should [therefore] not be forced to subsidize an unreasonable share of the costs of a litigation that does not concern them." *Id*. (citation and internal quotation marks omitted). The Rule "was not intended as a mechanism for entities which stand to benefit from certain litigation outcomes to evade discovery costs arising from their involvement in the underlying acts that gave rise to the lawsuit." *Id.* (*citing Tutor–Saliba Corp. v. United States,* 32 Fed. Cl. 609, 610 n. 5 (1995) (the fact that the nonparty was "substantially involved in the underlying transaction and could have anticipated that [its involvement might]

11

reasonably spawn some litigation, and discovery" was a circumstance weighing against shifting costs for compliance with Rule 45 subpoena) (quoting *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).

    2. *Compliance Cost-Shifting*.

Despite the required protection from undue expense under Rule 45, "[a] non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *In re Honeywell Int'l, Inc. Sec. Litig.,* 230 F.R.D. 293, 303 (S.D.N.Y. 2003); *In re Seroquel Prods. Liab. Litig.,* Case No. 6:06-md-1769-Orl-22DAB, 2007 WL 4287676, *2 (M.D. Fla. Dec. 6, 2007). This is because the intention of Rule 45 is to protect disinterested non-parties from incurring significant expense in complying with a subpoena in a case where they have no interest.

Courts have used a balancing approach to examine the equities of each particular case to determine how much cost to shift from the nonparty to the discovering party, "including 'whether the non-party actually has an interest in the outcome of the case, whether the non-party can more readily bear its cost than the requesting party, and whether the litigation is of public importance.'" *Linder v. Calero–Portocarrero,* 251 F.3d 178, 182 (D.C. Cir. 2001) (referencing the balancing test set forth in *In re The Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992)). Applying these principles, courts have

declined to shift all the costs of compliance to the requesting party when the nonparty has an interest in the litigation. *See Behrend v. Comcast Corp.*, 248 F.R.D. 84, 87 (D. Mass. 2008) (costs not shifted where non-party had an interest in the litigation where its transaction with the defendant was one of the bases of the antitrust claims at issue); *Bell Inc. v. GE Lighting, LLC*, Case No. 6:14-cv-12, 2014 WL 1630754, at *13 (W.D. Va. Apr. 23, 2014) (cost-shifting not appropriate where non-party was intimately involved in the underlying events); *United States v. Cardinal Growth, L.P.*, Case No. 11-C-4071, 2015 WL 850230, at *3 (N.D. Ill. Feb. 23, 2015) (reimbursement of compliance costs not awarded where non-party law firm was "not a typical disinterested non-party," as it had served as defendant's primary transactional firm for over a decade); *Cornell,* 2015 WL 4747260, at *3-5 (costs of compliance not shifted to requesting party where non-party had interest in the litigation).

In sum, "[w]hen a party from whom documents are sought is not a 'classic disinterested non-party,'... the court can order that the non-party produce the documents at its own expense." *In re Seroquel,* 2007 WL 4287676, at *3.

### B. Privileged or Protected Information.

Privileged information is not discoverable. See Fed. R. Civ. P. 26(b)(1). On timely motion, the court . . . *must* quash or modify a subpoena that: … requires disclosure of privileged or other protected matter, if no exception or waiver applies; or … [if the subpoena] subjects the person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv) (emphasis supplied). The Court "*may*, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information…." Fed. R. Civ. P. 45(d)(3)(B)(i) (emphasis supplied).

The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). The party seeking a protective order has the burden to demonstrate good cause and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the need for a protective order. *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (citations omitted). The specific demonstration of fact is made by way of an "affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality;

14

generalities, conclusory statements, and unsupported contentions do not suffice." *Theriot v. Northwestern Mut. Life Ins. Co.*, 382 F. Supp. 3d 1255, 1259 (M.D. Ala. 2019) (citations omitted).  In the Eleventh Circuit, if a movant establishes good cause, the district court must then balance the interests of those requesting the discovery against the interests of the ones seeking to keep the information confidential.  *Farnsworth*, 758 F.2d at 1547.

Rule 45 further provides that "a person withholding subpoenaed information under a claim that it is privileged… must (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Fed. R. Civ. 45(e)(2)(A).

### III.  DISCUSSION

The Court concludes that CTEH has not met its burden under Rule 45 or Rule 26 to withhold the discovery Plaintiff seeks.  As an initial matter, Plaintiff has established that the requested documents and testimony are relevant to this lawsuit.  Indeed, they are relevant to all BELO lawsuits in which BP relies upon CTEH's industrial hygiene data and opinions.  As Plaintiff correctly points out, information regarding the amount of chemicals

released from the Deepwater Horizon, the location and timing of their release, the amount of chemicals released, and the level and duration of a person's exposure to the chemicals go to the heart of what Plaintiff must prove at trial.

Additionally, discovery aimed at uncovering CTEH's potential bias as BP's paid contractor, as well as the reliability of CTEH's data and opinions, is fair game.  Having determined that the discovery at issue is relevant, the Court turns next to whether CTEH met its burden of establishing that the requests are overly burdensome or would result in undue burden or expense.

To meet its burden, CTEH was required to put forward by way of an affidavit or otherwise "specific information demonstrating how Plaintiff's request is overly burdensome." *In re 3M Combat Arms Earplug Prod. Liab. Lit.*, Case No. 3:19-md-2885-MCR-GRJ, 2021 WL 111743, * 2 n.3 (N.D. Fla. Jan. 12, 2021).  Instead of making this particularized showing, CTEH says in general that a search for the requested documents would "require innumerable man-hours and expense."  ECF No. 2 at 2.  CTEH has not filed an affidavit or even explained with specificity how or why it would be burdened by producing the requested information. Conspicuously absent from CTEH's motion is any information specifying how many documents

are at issue, or how much time it would take to search and identify them, or the cost of retrieving and reviewing the documents. In the absence of this information the Court is left to guess at the scope and level of burden CTEH would incur. CTEH's failure to provide this information is fatal to their motion. Therefore, because CTEH has failed to detail the burden or the cost CTEH has failed to establish that compliance with the requests would be either unduly burdensome or costly.[8]

      The Court further concludes that CTEH is not a typical disinterested party given its intimate involvement in the underlying events that gave rise to the BELO lawsuits. As a practical matter, CTEH must have anticipated that litigation related to the oil spill would be protracted and span many years. The fact that CTEH failed to keep relevant information in an easily retrievable manner is, therefore, unavailing. *See, e.g., Automated Merch. Sys. Inc. v. Crane Co.*, 279 F.R.D. 366, 375 (N.D. W.Va. 2011) ("'defendant may not excuse itself from compliance with Rule 34 by utilizing a system of record-keeping which conceals rather than discloses relevant records or

---

[8] CTEH does not say in its motion whether the documents Plaintiff seeks include electronically stored information ("ESI"). The Federal Civil Rules of Civil Procedure make clear that documents requested in discovery include ESI." Federal Rule of Civil Procedure 34, Advisory Committee Notes (2006 amendments). This is important because search protocols and available search tools may make retrieval of the information much less burdensome than CTEH suggests.

makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records to frustrate discovery, by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules.'") (quoting *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976)).

As for CTEH's request for an order of protection, CTEH failed to meet its burden here as well. First, as Plaintiff points out, CTEH has not made a particular and specific demonstration of facts as distinguished from stereotyped and conclusory statements to establish that it is entitled to a protective order. CTEH has not provided the Court with any detailed information whatsoever describing the type of information that merits protection.

Rule 45 requires a nonparty asserting a privilege or other protection to "expressly make the claim" and describe the nature of the documents withheld in a manner that "will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). The Court's review of CTEH's objections, however, shows that CTEH has provided no specifics at all. Instead, CTEH repeatedly recited the boilerplate objection that "Respondent further objects

to this request to the extent that it calls for documents that may be protected by the work product doctrine and/or the attorney-client privilege and may contain confidential, proprietary and/or sensitive business information." *See, e.g.*, CTEH's Response to Plaintiff's Request No. 4, ECF No. 10-2 at 6. Even in its memorandum in support of its motion, CTEH only says that "the requested documentation *may* include proprietary information and/or information that is protected by the attorney-client privilege and/or confidential business information belonging to the defendants." ECF No. 4 at 1 (emphasis supplied). That is woefully insufficient to raise a privilege. Without any information about what needs protecting or why, the Court cannot and will not enter a protective order.

In sum, the Court has carefully reviewed Plaintiff's 30(b)(6) notice of deposition areas of inquiry and the documents subpoenaed pursuant to Rule 45— along with CTEH's objections— and the Court finds that Plaintiff's discovery requests are reasonable and not overly burdensome given CTEH's role in the events underlying this litigation.

Nevertheless, with regard to Plaintiff's request for communications between CTEH and BP and/or government agencies/officials the Court will limit the requests to only include communications sent to or received by

CTEH employees who had managerial or oversight responsibilities during the relevant time period.

As for CTEH's request that the Court shift the costs of compliance to Plaintiff, the general rule is that the costs of production are borne by the producing party. CTEH has failed to offer any reason to change this and has failed to meet its burden to establish cost shifting.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, Non-Party Center for Toxicology & Environmental Health, LLC's Motion to Quash and for Protective Order, ECF No. 1, is **DENIED**.  CTEH's objections are **OVERRULED**, except for the limitation placed upon the discovery of CTEH's communications with BP and/or governmental agencies and officials as explained in this order.

**DONE AND ORDERED** this 16th day of February 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge